FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ NOV 21 2017 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

POWER UP LENDING GROUP, LTD.

                  Plaintiff,

    -against-

MJ BIOTECH, INC. F/K/A MICHAEL JAMES
ENTERPRISES, INC.,

                  Defendant.

-------------------------------------------------------------------X

Civil Action No.

# CV17 6821

FEUERSTEIN, J.

BROWN, M. J.

## COMPLAINT

Plaintiff, Power Up Lending Group, Ltd. ("Plaintiff") files this Complaint and alleges the following:

### I.    SUMMARY

1. Plaintiff brings this action for equitable relief and damages caused by violations of the anti-fraud provisions of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5(b) thereunder by the defendant, MJ Biotech, Inc. f/k/a Michael James Enterprises, Inc. ("Defendant"). Through this action, Plaintiff seeks to recover losses caused by the Defendant's intentional misconduct, including compensatory damages which may only be avoided if the equitable and injunctive relief described hereinbelow is granted.

2. That the Plaintiff was an investor in the Defendant and was well known to the Defendant. The Plaintiff's business strategy at the time of the stock purchases, loans and issuance of Notes at issue was to invest in publicly-traded, nano-cap companies whose securities are traded on the over-the-counter market sometimes referred to as the "pink sheets." Nano-cap companies like the Defendant are often capital constrained as their low market capitalization hinders their access to

banks or investment firms.  The Plaintiff provides capital to such companies as an investment in return for shares purchased at a discount to market price.

3. That the Plaintiff invested $106,000 in the Defendant by purchasing securities directly from the same and making loans thereto and has sustained damages of $154,705 exclusive of attorneys' fees, pre-judgment interest, costs and late fees.

## II.  JURISDICTION AND VENUE

4. This action arises under the anti-fraud provisions of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5, and the jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1331 and Section 27 of the Exchange Act.  In addition, jurisdiction is invoked pursuant to 28 U.S.C. Section 1332 as there is complete diversity between the parties and more than $75,000 is at issue, exclusive of interest, costs and fees.

5. Venue is proper in this Court pursuant to Section 27 of the Exchange Act and 28 U.S.C. Section 1391(b) because certain of the transactions, acts, practices and courses of conduct constituting violations of duties established by the Federal Securities Laws occurred within this judicial district.  Additionally, the Plaintiff transacts business and maintains its principal place of business in this district.  That further, the Defendant has contractually agreed with the Plaintiff to fix venue for any action in the State of New York, County of Nassau which is within the Eastern District and the jurisdiction of this Court.

6. That in connection with the acts alleged in this Complaint, the Defendant, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications, interstate electronic communications, and the facilities of the national securities markets. In particular, the Defendant made frequent use of interstate communications, including telephone, text messages, and e-mails

to conduct the negotiations, make representations and engage in business practices within the State of New York thus subjecting it to long arm jurisdiction within the State. Thus, the Defendant is subject to the jurisdiction of this Court and venue has been properly placed in the Eastern District.

### III.  PARTIES

7.  That at all times relevant herein, the Plaintiff has been and remains a corporation organized and existing under the laws of the State of Virginia with an office for business in the County of Nassau, not engaged in the banking business, and is a citizen of the State of Virginia.

8.  That at all times hereinafter mentioned and relevant herein, the Defendant has been and remains a corporation organized and existing under the laws of the State of Delaware with an office for business in the State of New Jersey, City of Whippany, and is a citizen of the State of Delaware. As a result, there is complete diversity between the parties.

### IV.  FACTUAL ALLEGATIONS

9. That heretofore and from time to time the Defendant made material misrepresentations of fact to the Plaintiff knowing that such misrepresentations were false and upon which the Plaintiff relied and was damaged.

10.  That as a result of these material misrepresentations, the Plaintiff invested $106,000 in the Defendant and sustained damages thereby.

### AS AND FOR A FIRST CAUSE OF ACTION
### PROMISSORY NOTES DEFAULTS

11.  Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 10 of this Complaint with the same force and effect as if fully set forth at length herein.

12. The Defendant as borrower made, executed and delivered to the Plaintiff a Convertible Promissory Note dated January 5, 2017 in the amount of $53,000 and a second Note dated March 13, 2107 in the amount of $43,000, and a third Note dated May 24, 2017 in the amount of $10,000

3

("the Notes") which Notes were issued pursuant to Securities Purchase Agreements (the "SPAS") of even date which provide for certain issuance of and conversion rights in and to the stock of the Defendant. The Notes were fully funded on a timely basis.

13.  That both the Notes and the Agreements provided that the venue for any action for lawsuit between the parties would be in the State of New York, County of Nassau and that the instruments would be governed by and construed in accordance with the laws of the State of Virginia.

14.  That the Notes and Agreements provide in pertinent part that the Defendant must be and remain current in its filing obligations under the Exchange Act of 1933 and that it must maintain sufficient reserves of stock with its transfer agent to permit conversion requests from the Plaintiff to be processed in a timely manner.

15.  That the Defendant has failed to file its Form 10K (Annual Report) with the Securities and Exchange Commission ("SEC") that was due to be filed by March 30, 2017, covering the year ending December 31, 2016, and has also failed to file the Form 10Qs that were due to be filed for subsequent quarters in 2017, thereby defaulting not once but twice under the Notes and Agreements. That in addition, the Plaintiff was advised on or about November 2017 by the Defendant's transfer agent, in response to a conversion request, that the Defendant had not maintained sufficient authorized and reserved shares, such that the conversion request could not be honored. This was a separate, distinct and material breach of the Notes and Agreements.

16.  That the Notes provide in pertinent part that the failure to file constitutes an event of default under Section 3.9 entitling the Plaintiff to recovery 150% of the outstanding principal amount of the Note together with accrued and unpaid interest and default interest.

17.  As a result of the Defendant's default, on April 24, 2017, the Plaintiff authorized its attorney to prepare and forward a letter advising the Defendant of its default under the Notes.  A copy of that Default Letter is annexed hereto as Exhibit "A", and the contents thereof are hereby incorporated by reference.  The defaults referenced therein have never been cured and have only become more egregious over time.

18.  That the Defendant has caused damages to the Plaintiff in an amount not less than $154,705, consisting of $75,205 due on the First Note, $64,500 on the Second Note and $10,000 on the Third Note together with interest and default interest as set forth therein.

### AS AND FOR A SECOND CAUSE OF ACTION
### BREACH OF CONTRACT – LOST PROFITS

19.  Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 18 of this Complaint with the same force and effect as if fully set forth at length herein.

20.  The failure of the Defendant to fail to comply with the Reporting Requirements of the Exchange Act of 1933 has directly interfered with the Plaintiff's conversion rights under the Notes and SPAs and prevented the Plaintiff from enjoying the benefits of its bargain and contractual rights.

21.  That as a direct result of the defaults of the Defendant and its failure to abide by its contractual obligations, the Plaintiff has been deprived of and continues to be deprived of the opportunity to acquire and to sell the common stock of the Defendant pursuant to Rule 144 of the Exchange Act of 1933 at a profit which profits have been irretrievably lost as the markets for that common stock can no longer be recreated.

22.  That by reason of the foregoing, the Plaintiff is entitled to judgment in an amount to be determined by the Court and equal to the lost profits that the Plaintiff would have realized had

the stock been made available and delivered to Plaintiff in accordance with the Note and Agreements.

## AS AND FOR A THIRD CAUSE OF ACTION
### BREACH OF CONTRACT – LITIGATION EXPENSES

23. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 22 of this Complaint with the same force and effect as if fully set forth at length herein.

24. That the Notes and Agreements provide that in the event of a dispute and/or litigation between the parties, the prevailing party shall be entitled to recover all of its litigation expenses including reasonable attorneys' fees.

25. That by reason of the foregoing, the Plaintiff is entitled to judgment for the amount of its reasonable legal fees and litigation expenses paid or incurred in this action.

## AS AND FOR A FOURTH CAUSE OF ACTION
### VIOLATIONS OF SECTION 10(b) OF THE
### EXCHANGE ACT AND RULE 10(b)-5b

26. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 25 of this Complaint with the same force and effect as if fully set forth at length herein.

27. That through the foregoing conduct, the Defendant knowingly and recklessly engaged in manipulative and deceptive conduct in violation of 15 U.S.C. Section 78j(b) and the Rules and Regulations promulgated thereunder, by failing to disclose and misrepresenting the true nature of their intentions as set forth above.

28. That the Defendant further engaged in knowing manipulation and deceptive conduct by directly representing and warranting that the Defendant would honor its obligations pursuant to the Note and Agreement when in truth and in fact it had no intentions to do so.

29.   That in reliance on the foregoing misrepresentations and material omissions by the Defendant, the Plaintiff was induced to purchase the Defendant's securities and to make loans to the Defendant as aforesaid.

30. That as a direct and proximate result of the Defendant's misconduct, the Plaintiff suffered damages in an amount no less than $103,120.

## AS AND FOR A FIFTH CAUSE OF ACTION
## INJUNCTIVE AND EQUITABLE RELIEF

31.  Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 30 of this Complaint with the same force and effect as if fully set forth at length herein.

32.   That the total amount due to the Plaintiff is $154,705 exclusive of any additional liquidated damages, consequential damages, default interest, statutory pre-judgment interest, legal fees, court costs and litigation expenses.

33.  That while the Plaintiff is clearly entitled to a money judgment, the Defendant is clearly incapable of satisfying any such judgment obtained.

34.   That in its most recent filings required under the Federal Securities Laws, the Defendant concedes that it has total assets that are exceeded by its total liabilities thus rendering it insolvent.

35.  That the Defendant also represents therein that for the reporting periods it had a net loss and has insufficient cash to meet its obligations thus rendering it insolvent.

36.  That the only viable avenue available to the Plaintiff to obtain repayment of the Note is by exercising its conversion rights and thereby obtaining unrestricted shares in the Defendant and selling those shares on the open market.

37. That at present there is an active market for the Defendant's stock which continues to trade in significant volume.

38. That so long as that activity continues and assuming that the Plaintiff's conversion rights are not frustrated or impeded, the Plaintiff will be able to obtain the unrestricted shares, sell them in the marketplace, and recover the outstanding principal indebtedness owed to it as well as any anticipated profits.

39. That the market for the shares of stock in the Defendant is extremely volatile such that there can be no assurance that the current level of activity will continue to be sustained.

40. That if, as and when such trading subsides or is curtailed, any shares obtained by the Plaintiff at that time will no longer be saleable, thereby preventing the Plaintiff from recovering the indebtedness due to it and leading to irreparable harm based upon such an unrecoverable judgment.

41. That time is of the essence and to prevent the Plaintiff from suffering such irreparable harm, the Plaintiff must immediately be permitted to exercise its conversion rights and the Defendant must be immediately directed to cooperate with the same and to deliver the shares of stock at issue after complying with the SEC requirements as aforesaid.

42. That because of the nature, condition and value of the stock which Plaintiff seeks to acquire, which is unique to it under the facts and circumstances presented and because the Plaintiff will suffer and sustain irreparable damage that cannot be recovered through a money judgment against the Defendant, the Plaintiff has no adequate remedy at law and is entitled to equitable relief.

43. That the Defendant itself has acknowledged that the Plaintiff will sustain irreparable harm under the facts presented in that it contractually agreed to the granting of injunctive relief

directing the issuance, purchase and sale of stock in the Note and Agreement, such that the relief sought herein has already been contractually consented to.

44.   That by virtue of the foregoing, the Plaintiff is entitled to and demands a judgment directing the Defendant to execute and deliver all documents necessary to complete the conversion process and to deliver the stock sought by Plaintiff to which it is contractually entitled in the form of a declaratory judgment and a mandatory injunction.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

(i)    For $154,705 on the First Cause of Action;

(ii)   For an amount of lost profits to be determined by the Court for not less than $154,705 on the Second Cause of Action;

(iii)  Awarding the Plaintiff its reasonable legal fees and cost of litigation on the Third Cause of Action;

(iv)   For $103,120 on the Fourth Cause of Action;

(v)    For a temporary restraining order and preliminary and permanent injunction against the Defendant directing it, its agents, servants and employees to promptly take all steps necessary and proper to permit the conversion of debt to stock and to deliver the stock at issue as described above on the Fifth Cause of Action;

(vi)   Together with the costs and disbursements of this action, interest at the rate of default as set forth in the Note, pre-judgment interest as provided by statute, and such other and further relief as to the Court may seem just and proper.

Dated:  Great Neck, New York
        November 16, 2017

NAIDICH WURMAN, LLP

By: _____
     Richard S. Naidich, Esq. (RSN4102)
Attorneys for Plaintiff
111 Great Neck Road, Suite 214
Great Neck, NY 11021
(516) 498-2900
Fax: (516) 466-3555

10

Exhibit A

**CZARNIK & ASSOCIATES**
245 Park Avenue
39th Floor
New York, New York 10167

**Stephen J. Czarnik, Esq.**
tel. (212) 961-7950
fax.(212) 658-9915
sczarnik@czarnikco.com


April 24, 2017


**VIA Email: james@mjenterprises.com**


MICHAEL JAMES ENTERPRISES, INC.
784 Morris Turnpike #334
Short Hills, NJ 07078
Attention:      James M. Farinella
                Chief Financial Officer


    **RE:**    **Power Up Lending Group Ltd. – Convertible Promissory Note**


Mr. Farinella:

    As you are aware, I am special counsel to Power Up Lending Group Ltd. ("PowerUp"). Your firm, MICHAEL JAMES ENTERPRISES, INC. (the "Company"), is the maker of two (2) Convertible Promissory Notes, one dated January 5, 2017 and the other dated March 13, 2017 (collectively, the "Notes"), in favor of PowerUp wherein pursuant to the Notes, PowerUp loaned to the Company Ninety-Six Thousand Dollars (96,000.00) in the aggregate. In connection with the transactions contemplated by each Note, the Company also executed other documents including but not limited a Securities Purchase Agreement, Share Reverse Letter and Officers Certificate.

    As you are aware, the Company has failed to file its Form 10-K for the period ending December 31, 2016 (the "Filing") and thus has failed to comply with the Securities Act of 1934, as amended.

    Section 3.9 of each of the Notes provides the following as an Event of Default (as such term is defined in the Notes):

> "3.9 Failure to Comply with the Exchange Act. The Borrower shall fail to comply with the reporting requirements of the Exchange Act; and/or the Borrower shall cease to be subject to the reporting requirements of the Exchange Act."

*MICHAEL JAMES ENTERPRISES, INC.*
*April 24, 2017*
*Page 2 of 2*

      I have been advised that PowerUp is willing to waive this default if the Company can provide sufficient further assurances to PowerUp and I with respect to the Filing and the Filing is made with the Securities and Exchange Commission in short order. Please contact me to discuss the foregoing and to avoid the default.

      Your failure to comply with the demand of this letter will result in PowerUp, exercising all of its rights and remedies available to it at law or in equity.

      I look forward to your immediate response.

Regards,

cc:     Mr. Curt Kramer
        Chief Executive Officer
        Power Up Lending Group Ltd.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK          Civil Action No.:

POWER UP LENDING GROUP, LTD.,

                              Plaintiff,

          -against-

MJ BIOTECH, INC. F/K/A MICHAEL JAMES
ENTERPRISES, INC.,

                              Defendant.

---

### SUMMONS AND COMPLAINT

---

**NAIDICH WURMAN LLP
ATTORNEYS FOR PLAINTIFF
111 GREAT NECK ROAD - SUITE 214
GREAT NECK, NEW YORK 11021
(516) 498-2900**

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.

DATED: November 21, 2017                Signature: _____
                                        Print: Richard S. Naidich, Esq

Service of a copy of the within                      is hereby admitted.
Dated:

                                        Attorney(s) for _____

PLEASE TAKE NOTICE

NOTICE            that the within is a (certified) true copy of an Order entered
OF ENTRY          in the office of the clerk of the within named Court on          , 20_____.

NOTICE OF         that an Order of which the within is a true copy will be presented for
SETTLEMENT        settlement to the Hon.                     , one of the judges of
                  within named Court, at                     on          , 20_____ at
                  a.m.

DATED: Great Neck, New York
        November 21, 2017                NAIDICH WURMAN LLP
                                         Attorneys for Plaintiff
                                         111 Great Neck Road - Suite 214
                                         Great Neck, New York 11021
                                         (516) 498-2900